UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES COCHRAN, d/b/a/ COCHRAN DRYWALL,

    Plaintiff,

v.

MICHIGAN REGIONAL COUNCIL OF CARPENTERS OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA UPPER PENINSULA,

    Defendant.

_____/

Case No. 2:16-cv-25

HON. ROBERT HOLMES BELL

## **O P I N I O N**

    This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure. On November 10, 2015, Plaintiff James Cochran, d/b/a/ Cochran Drywall ("Cochran"), filed an action for declaratory judgment in the 25th Judicial Circuit Court in Marquette County, Michigan. (ECF No. 1-1.) Defendant Michigan Regional Council of Carpenters of the United States Brotherhood of Carpenters and Joiners of America Upper Peninsula (the "Union") removed the action to this Court on November 25, 2015, arguing that jurisdiction is proper because this matter implicates the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 1.) The parties stipulated and agreed that this

Court has subject matter jurisdiction. (ECF No. 8.) On March 24, 2016, Defendant filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.)

### I.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. A Rule 12(b)(6) motion to dismiss requires the Court to "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Plaintiff must allege facts that "state a claim to relief that is plausible on its

face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677).

## II.

Plaintiff "is an individual that performs dry wall hanging services." (Am. Compl. ¶ 2, ECF No. 16.) On June 13, 2009, Plaintiff and Defendant entered into a Collective Bargaining Agreement ("CBA"). (CBA, ECF No. 16-2, PageID.343.) The CBA "covers all employees performing carpentry work and all divisions of the Craft engaged in general building and heavy construction coming under the jurisdiction of the United Brotherhood of Carpenters and Joiners of America." (*Id.* at 1, PageID.317.) It discusses a drug testing program, the number of hours employees may work, the wages paid to carpenters, foremen, general foremen, divers, and apprentices, and requires employers to make contributions to the Michigan Carpenters Fringe Benefit Funds (the "Funds"). (*Id.* at 6-16.) "If the Employer fails to make fringe benefit contributions . . . , the Union may take economic action against the Employer." (*Id.* at 23.) The last page of the CBA includes a line for employers to list their state license number below their signature. (*Id.* at 50, PageID.343.) When Plaintiff signed the CBA, he was told "that he did not have to have a license number." (Am. Compl. ¶ 14.) Consequently, he left this line blank. (*Id.* ¶ 12.)

In 2011, the State of Michigan Department of Energy, Labor and Economic Growth issued a notice that Plaintiff was "not licensed by the State of Michigan as a Residential Builder or Residential Maintenance & Alteration Contractor or as a Residential Builder Salesperson for the specific period January 1, 1987, to February 28, 2011."[1] (Ex. 3 to Am. Compl., ECF No. 16-3.) Plaintiff was charged with "performing contracting services without a license." (Am. Compl. ¶ 20.) The state prosecutor's motion for nolle prosequi was granted based on the "agreement and understanding that [Plaintiff] becomes licensed for residential work, or no longer works residential jobs." (Order, Ex. 5 to Am. Compl., ECF No. 16-5.)

Plaintiff continued working. On October 15, 2015, the Union sent a demand letter to Plaintiff, alleging that he failed to make required payments to the Funds in connection with work that his company, Cochran Drywall, completed on a project in Marquette. (Demand Letter, Ex. 1 to Am. Compl., ECF No. 16-1.) Plaintiff does not deny that he has not made payments to the Funds. Rather, Plaintiff contends that he was not required to, because he is not bound by the CBA. Plaintiff states that after he was charged with being an unlicensed worker, he presumed that the CBA "was void as he never had the ability to work under the Contract with Defendant." (Am. Compl. ¶ 27.) Two days before the Funds filed a separate

---

[1] Michigan's Occupation Code provides, in part:

> A person shall not engage in or attempt to engage in the practice of an occupation regulated under this act or use a title designated in this act unless the person possesses a license or registration issued by the department for the occupation.

Mich. Comp. Laws § 339.601(1). Plaintiff notes that the Occupation Code requires "residential builders" and "residential maintenance and alteration contractors" to be licensed. *Id.* § 339.2401(b).

lawsuit against Plaintiff to collect on the unpaid contributions,[2] Plaintiff filed this action for declaratory judgment. Plaintiff requests that this Court "determine, pursuant to Fed. R. Civ. P. 57, that [the CBA] is void or voidable and once that determination is made that the Union by and through Fringe Benefit Funds have no rights to demand any money owed[.]" (Am. Compl., PageID.309.) Defendant argues that the action is meritless and should be dismissed because the CBA is neither void nor voidable.

**A. The CBA is Not Void Due to Illegality**

Plaintiff first argues that the CBA "was illegal, as it violated Michigan Statute 339.601. Contracts cannot be formed for illegal purposes and Courts will not enforce such contracts." (Pl.'s Resp. to Mot. to Dismiss 9, ECF No. 20.) Plaintiff states that the CBA "is an alleged contract for services to be performed," (*id.* at 9), and that "[t]o find that the contract is not void would in essence require the Plaintiff to continue to perform under a contract that would make his performance a misdemeanor crime," (*id.* at 10).

Plaintiff is correct that "[c]ontracts founded on acts prohibited by a statute, or contracts in violation of public policy, are void." *Michelson v. Voison*, 658 N.W.2d 188, 190 (Mich. Ct. App. 2003); *see also Van Poperin v. Dilorenzo*, No. 265168, 2006 WL 1479550, at *2 (Mich. Ct. App. May 30, 2006) (noting that courts have "a duty to dismiss an action if the only basis on which the action can rest is an agreement that is invalid because it is prohibited by law or contrary to public policy"). For instance, in *Michelson*, the plaintiff

---

[2] A review of the Court's docket indicates that the case *Michigan Carpenters' Council Pension Fund et al. v. Cochran*, No. 2:16-cv-46 (W.D. Mich.), was assigned to Judge Neff, and that the parties have since stipulated to dismiss the matter without prejudice. (ECF No. 20.)

5

signed an agreement to purchase a viatical settlement[3] through the defendants. *Id.* at 189. A viatical settlement falls within the Michigan Uniform Securities Act's definition of a security. *Id.* at 191. Because the defendants, in violation of Michigan law, were not licensed or registered to sell securities, the Michigan Court of Appeals found that the agreement between the parties was void. *Id.* And in *Van Poperin*, the plaintiff, a licensed engineer, entered into a partnership agreement with two unlicensed engineers. 2006 WL 1479550, at *1. "The purpose of the partnership was for [the plaintiff] to provide engineering services, on behalf of [the partnership], to entities controlled by [one of the defendants]." *Id.* Michigan law provides that a partnership may only "engage in . . . professional engineering . . . if not less than 2/3 of the principals of the firm are licensees." Mich. Comp. Laws § 339.2010(1). Because the "partnership agreement was founded on an act that is unambiguously prohibited by MCL 339.2010; namely, the partnership's act of engaging in professional engineering services," the agreement was "unenforceable as a matter of law." *Id.*

The CBA in this case is distinguishable from the agreements in *Michelson* and *Van Poperin* because it was not founded on an act prohibited by a statute. Whereas the defendant in *Michelson* could not perform his obligation to sell a viatical settlement without breaking the law, and the partnership in *Van Poperin* could not operate without breaking the law, the same is not true of Plaintiff's performance under the CBA. No provision of the CBA requires

---

[3] "A viatical settlement is an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person [the viator]—typically an AIDS victim—at a discount of 20 to 40 percent, depending upon the insured's life expectancy. When the insured dies, the investor receives the benefit of the insurance. The investor's profit is the difference between the discounted purchase price paid to the insured and the death benefit collected from the insurer, less transaction costs, premiums paid, and other administrative expenses." *Sec. & Exch. Comm'n v. Life Partners, Inc.*, 87 F.3d 536, 537 (D.C. Cir. 1996).

Plaintiff to engage in residential building or contracting without a license. In fact, it does not require him to complete any work at all. As Defendant notes, the CBA is a labor agreement, not a construction contract.

Moreover, even if the Court did accept Plaintiff's argument that the CBA is a contract to perform services, Plaintiff has still failed to show that his performance under the contract would necessarily be unlawful. Michigan law allows for builders to "engage in the business of or act in the capacity of a residential builder or a residential maintenance and alteration contractor or salesperson . . . without having a license" in certain instances. *See* Mich. Comp. Laws § 339.2403. And the CBA does not solely cover residential contractors. It governs wages for "[c]arpenters working on waterfront work on the Great Lakes or connecting water navigable to lake carriers," and further includes work performed on *industrial* construction, which is defined as "all industrial manufacturing and processing plants such as ore plants, paper mills, power houses, foundries, saw mills, wood processing plants, or other complexes." (CBA 14, 15.) It covers "all employees performing carpentry work and all divisions of the Craft engaged in general building and heavy construction." (*Id.* at 1.)

In short, because the CBA imposes no obligation on Plaintiff to violate Mich. Comp. Laws § 339.2401, it was not "founded on acts prohibited by a statute," *Michelson*, 658 N.W.2d at 190, and it is not void.

**B. The CBA is Not Voidable Due to Fraudulent Inducement**

Plaintiff next argues that the CBA is voidable because he relied on the Union representative's statement that "he did not have to have a license number as a signatory contractor for the Union" before he signed the CBA. (Am. Compl. ¶¶ 14, 15.) Plaintiff states that the "Union representative knew at the time the statement was made to Cochran that it was a false statement, as this is the industry in which they work, or he recklessly made it without knowledge of its truth." (*Id.* ¶ 18.)

**1. Plaintiff's Claim is Barred by the Statute of Limitations**

Defendant contends that Plaintiff's argument–which appears to be that the CBA is voidable due to fraudulent inducement–is barred by Michigan's statute of limitations. In Michigan, claims of fraud must be brought within six years "after the claims accrue." Mich. Comp. Laws § 600.5813; *see also Boyle v. Gen. Motors Corp.*, 551 N.W.2d 557, 559 n.3 (Mich. 2003) (noting that a plaintiff has "the full period of six years from the date of the fraudulent act to file a lawsuit"). In this case, the alleged fraudulent statement occurred no later than June 13, 2009, the date on which the CBA became effective. (CBA 50.) Plaintiff's complaint was filed in state court on November 10, 2015, more than six years after the date of the fraudulent act.

Plaintiff responds that the statute of limitations cannot apply to his claim because he seeks only equitable relief in the form of a declaratory judgment. He is mistaken. "A request for declaratory relief is barred to the same extent that the claim for substantive relief on

which it is based would also be barred." *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997); *see also Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 643 (E.D. Mich. 2014) ("[T]he Sixth Circuit has held that a declaratory judgment claim can be subject to a limitations period."). Holding otherwise would "allow a plaintiff to 'mak[e] a mockery of the statute of limitations by the simple expedient of creative labelling.'" *Int'l Ass'n of Machinists*, 108 F.3d at 668 (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir. 1991)). Thus, because a claim of fraudulent inducement would be barred by the statute of limitations, Plaintiff's request that this Court declare the CBA voidable because he was fraudulently induced into signing it is also barred.

**2. Plaintiff's Claim is Meritless Under ERISA**

As noted, the parties stipulated and agreed that the Court has jurisdiction over this matter because the CBA implicates ERISA. The Funds that Plaintiff was required to make payments into "are an . . . ERISA based plan and are third-party beneficiaries to the CBA." (Mot. to Dismiss 5.)

In 1980, Congress enacted Section 515 of ERISA out of concern that "employers were escaping their obligations to contribute to ERISA funds by pointing to various defects in the process of negotiating collective bargaining agreements with unions." *Iron Workers' Local No. 25 Pension Fund v. Allied Fence & Sec. Sys., Inc.*, 922 F. Supp. 1250, 1255 (E.D. Mich. 1996). Accordingly, "§ 515 precludes employers from appealing to defects in a CBA's formation–'such as fraud in the inducement . . .'–as justification for failing to make the

9

ERISA contributions called for in the CBA." *Id.* (quoting *Central States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1152 (7th Cir. 1989)); *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 563 (6th Cir. 2015) ("[F]raud in the inducement makes a transaction merely voidable, and 'cannot cut off the fund's claims.'") (citations omitted).

Thus, Plaintiff's argument that the CBA is voidable because he was fraudulently induced into entering into it also fails because it is precluded by Section 515 of ERISA.

### III.

For the reasons stated above, Defendant's motion to dismiss Plaintiff's amended complaint for failure to state a claim will be granted. A separate order and judgment will enter consistent with this opinion.

Dated: June 14, 2016            /s/ Robert Holmes Bell
                                ROBERT HOLMES BELL
                                UNITED STATES DISTRICT JUDGE